FOR PUBLICATION

FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 16-290 |
| MUADHDHIN BEY | |

## OPINION

Defendant Muadhdhin Bey was arrested on March 28, 2016 in Philadelphia and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Presently before the Court is the government's motion to admit evidence of: (1) Bey's 2002 conviction for a firearms offense and 2002 arrest for a separate firearms offense under Federal Rule of Evidence 404(b)(2); and (2) three music videos and one audio clip from songs written and performed by Bey, which the government seeks to admit under Federal Rules of Evidence 404(b)(2) and 801(d)(2)(A). The Motion is denied for the reasons that follow.

### I.  PROFFERED EVIDENCE

The government seeks admission of the following evidence:

1. Evidence that on September 18, 2002, Bey was arrested at 1500 South Ringgold Street, Philadelphia and charged with carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). After a mistrial in the United States Court for this District, the firearms count was ultimately dismissed. The government moves to admit evidence of this arrest under Rule 404(b)(2), arguing that the arrest goes to prove Bey's knowledge and absence of mistake in the instant offense.

2. Evidence that on September 29, 2002, Bey was arrested in the area of 1600 Point Breeze Avenue, Philadelphia, and subsequently convicted of a firearms offense in the

Pennsylvania Court of Common Pleas. The government moves to admit evidence of this conviction under Rule 404(b)(2), arguing that the conviction goes to prove Bey's knowledge and absence of mistake in the instant offense.

3. An undated music video depicting Bey performing the song, "Criminal," released by Bey under the pseudonym "Prada Idah." The lyrics to "Criminal" include:

> Where I'm from we don't miss and Farrakhan the minister / play with heavy Tommy guns like John Dillinger / Muadhdhin Bey / for short I'm [inaudible] / [inaudible] told yourself Philly kill at will / all you fellas understand 'cause you hide the pills / Man I'm warning ya / go and ask Jay Electronica / 23rd and Tasker, blast you in your yarmulke / No disrespect to Jews but I move with the Uz / Coming through to bruise on you dudes.

The government moves to admit this music video under Rule 404(b)(2) to prove knowledge, intent, and absence of mistake, and as an exemption from the hearsay rule under Rule 801(d)(2)(A).

4. An undated music video depicting Bey performing the song, "Love Me," released by Bey under the pseudonym "Muslida Bey." The lyrics to "Love Me" include:

> If you walk / we spark / you're dying / with lead flying / rock solid / small Glock in my pocket / My grandpop was Lex Boots / the Black Mafia.

The government moves to admit this music video under Rule 404(b)(2) to prove knowledge, intent, and absence of mistake, and as an exemption from the hearsay rule under Rule 801(d)(2)(A).

5. An undated music video depicting Bey performing the song, "Straight Outta Philly," released by Bey under the pseudonym "Muslida Bey." The lyrics to "Straight Outta Philly" include:

> Ain't with that chitty chatta / south Philadel / south kill at will / I feel that steel / put one in your grill / top slida / Muslida / bang choppers / shots burn in your chest / like a shot of that vodka.

The government moves to admit this music video under Rule 404(b)(2) to prove knowledge, intent, and absence of mistake, and as an exemption from the hearsay rule under Rule 801(d)(2)(A).

6. An undated audio clip of the song, "Outtro," performed and released by Bey under the pseudonym "Muslida Bey." The audio clip contains the following lyrics:

> Shots fired, yeah / When you see me I'm strapped under my garments / Packin' pistols in Porsches.

The government moves to admit this audio clip under Rule 404(b)(2) to prove knowledge, intent, and absence of mistake, and as an exemption from the hearsay rule under Rule 801(d)(2)(A).

## II. DISCUSSION

### 1. <u>Admissibility of Bey's 2002 Arrest and Conviction for Firearms Offenses under Rule 404(b)(2)</u>

Federal Rule of Evidence 404(b) provides, in relevant part:

> **Rule 404(b) Crimes, Wrongs, or Other Acts.**
>
> *(1) Prohibited Uses.*
>
> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses; Notice in a Criminal Case.*
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

The Third Circuit has recognized that "Rule 404(b) is a rule of general exclusion, and carries with it no presumption of admissibility." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (quotation omitted); *see also United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014). Thus, the Rule "directs that evidence of prior bad acts be excluded – *unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose. The 'permitted uses' of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to this rule of exclusion." *Caldwell*, 760 F.3d at 276 (emphasis in original). The Third Circuit has explained that Rule 404(b) "reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is." *Id*. (emphasis in original).

There are four distinct steps for analyzing the admissibility of non-propensity evidence under Rule 404(b)(2). *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *Caldwell*, 760 F.3d at 276-78. First, the proponent of the evidence must identify a proper Rule 404(b) purpose for admission that is "at issue" in, or relevant to, the case. *Id*. at 276. Second, the proponent must explain how the proffered evidence is relevant to that purpose. *Id*. The task at this step "is not merely to find a pigeonhole in which the proof might fit, but to actually demonstrate that the evidence proves something other than propensity." *Id*. (quotation and citation omitted). Third, "the court must evaluate pursuant to Rule 403 whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence." *Id*. at 277. Finally, if the defendant requests it, the court must provide a limiting instruction advising the jury that the evidence is admissible for a limited purpose. *Id*. As the moving party, the government has the burden of proving admissibility under each of these steps. *Id*. at 276; *Brown*, 765 F.3d at 291.

### a. Identification of a Proper Rule 404(b)(2) Purpose "At Issue" in this Case

Turning to the first step of this four-part test with respect to Bey's previous firearms arrest and conviction, the government argues that this evidence is admissible to prove Bey's knowledge and absence of mistake in possessing a firearm on March 28, 2016.

Although knowledge and absence of mistake are indeed permissible purposes under Rule 404(b)(2), the pertinent question is whether they are "at issue" here. *Caldwell*, 760 F.3d at 276. "In evaluating whether an identified purpose is 'at issue,' courts should consider the 'material issues and facts the government must prove to obtain a conviction.'" *Id*. (citation omitted). The Third Circuit has stressed that "a proponent's incantation of the proper uses of prior act evidence does not magically transform inadmissible evidence into admissible evidence." *Id*. (quotation and citation omitted).

The instant matter is a gun possession case. Bey has been charged with a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), which makes it unlawful for a convicted felon knowingly to possess a firearm that has traveled in interstate commerce. *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012). "The government can prove possession of a firearm for purposes of § 922(g)(1) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was found (constructive possession)." *Caldwell*, 760 F.3d at 278 (citation omitted). Here, the government's theory is purely one of actual possession.

Because the government has proceeded solely on a theory of actual possession, Bey's knowledge and absence of mistake is not at issue. *Id*. at 279. As the Third Circuit explained in *Caldwell*:

> Although 18 U.S.C. § 922(g)(1) criminalizes the "knowing" possession of a firearm by a convicted felon, a defendant's knowledge is almost never a material issue when the government relies exclusively on a theory of actual possession. Indeed, absent unusual circumstances (such as when a defendant claims he did not realize the object in his hand was a gun), the

knowledge element in a felon-in-possession case will necessarily be satisfied if the jury finds the defendant physically possessed the firearm.

*Id*.

There are no "unusual circumstances" that put knowledge or mistake at issue in this case.[1] *Id*. If, for example, Bey conceded that he possessed a firearm, but claimed that he believed it to be a toy, his knowledge and absence of mistake would be in issue. *Id*. at 281-82. Similarly, if the firearm was discovered inside a backpack Bey was carrying and he claimed it was placed there without his knowledge, his knowledge would be in issue. *Id*. at 282.

Bey does not claim that he possessed a firearm unknowingly or mistakenly. His defense is a straightforward denial that he physically possessed a firearm. *See United States v. Lee*, 612 F.3d 170, 187 (3d Cir. 2010) (finding that knowledge and mistake were not in issue where the defense was "a straightforward denial that any gun was there."). By alleging that the police "planted" a firearm on him, Bey does not suggest that he unknowingly or mistakenly possessed the firearm; rather, he is contending that any firearm recovered at the scene of his arrest was not his. As the Court concluded in *Caldwell*, claiming innocence of an offense with a knowledge-based *mens rea* does not open the door to admissibility of prior convictions of the same crime. *Caldwell*, 760 F.3d at 281. "Such a holding would eviscerate Rule 404(b)'s protection and completely swallow the general rule against admission of prior bad act evidence." *Id*. (citations omitted).

Accordingly, because Bey denies having actual possession of the firearm, there is no non-propensity purpose for introducing his 2002 conviction and arrest for firearms possession. Rather, the only purpose of introducing this evidence is to demonstrate that if Bey knowingly possessed firearms in the past, he is more likely to have knowingly possessed the firearm on March 28, 2016. This is exactly the type of evidence that Rule 404(b) prohibits. *Id*. at 283.

---

[1] Indeed, in his briefing, Bey does not dispute that the knowledge element of § 922(g)(1) will necessarily be satisfied if the jury finds that he physically possessed the firearm. (ECF No. 53 at 8.)

Because the government has been unable to demonstrate that Bey's knowledge or absence of mistake are "at issue" in this case, it has failed to meet its burden of proving admissibility under 404(b) and there is no need to address the remainder of the four-part test. *Caldwell*, 760 F.3d at 283.

As the Third Circuit has noted, however, "[s]ituations may indeed arise where the content of a defendant's trial testimony transforms a previously irrelevant 404(b) purpose into a material issue in the case." *Id*. at 281. Thus, if Bey introduces evidence to the effect that he unknowingly or mistakenly possessed the firearm, it will become critical for the prosecution to rebut such evidence and to show his knowledge of the true nature of the gun. *Id*. Accordingly, this holding is without prejudice to the government reasserting this motion should the trial testimony put a proper Rule 404(b) purpose at issue.

**2. Admissibility of Rap Videos and Audio Clip under Rules 404(b)(2) and 801(d)(2)(A)**

Next, the government proffers three undated rap videos featuring Bey performing the songs "Criminal," "Love Me," and "Straight Outta Philly," as well as one undated audio clip of Bey performing the song, "Outtro." The government argues that the rap videos and audio clip are admissible as prior acts proving a non-propensity purpose under Rule 404(b)(2), and that they are subject to the hearsay exemption in Rule 801(d)(2)(A).

a. Rule 404(b)(2): Prior Acts Proving a Non-Propensity Purpose

The government contends that the rap videos and audio clip are admissible as prior acts under Rule 404(b)(2) to prove Bey's knowledge and absence of mistake. Returning to the first step of the four-part test for admissibility of evidence under Rule 404(b)(2), and as discussed in detail *supra*, Bey's knowledge and absence of mistake are not "at issue" in this case. *Caldwell*, 760 F.3d at 276-78.

Additionally, the government argues that the rap music evidence is admissible under 404(b)(2) to prove Bey's intent. Just as with knowledge and mistake, however, Bey's intent is not at issue in this case. *Id*. at 279 ("[I]n a trial for a violation of § 922(g)(1), knowledge *and intent* are not proper 404(b)

purposes where the prosecution is based on the defendant's actual possession of the firearm.") (emphasis added). Because 18 U.S.C. § 922(g)(1) is not a specific intent statute, "[t]he government need only prove that [the defendant] knowingly possessed a firearm – that the possession was not an accident or mistake." *United States v. Davis*, 328 Fed. App'x 138, 143 (3d Cir. 2009) (quotation omitted). Thus, where the government relies on an actual possession theory and the defendant has not placed his mental state in issue, any intent beyond knowing possession of the firearm is immaterial to the defendant's guilt. *See United States v. Starnes*, 583 F.3d 196, 209 (3d Cir. 2009) ("[A] general-intent crime is one that requires proof of knowledge with respect to the *actus reus* of the crime, while a specific-intent crime, in contrast, is one whose definition requires a special *mens rea* above and beyond that which is required for the *actus reus* of the crime.") (quotations and citations omitted); *United States v. Gruttadauro*, 818 F.2d 1323, 1328 (7th Cir. 1987) (noting that, with non-specific intent crimes, the mental state can be inferred from the surrounding circumstances).

    The government cites a number of cases in support of its argument to admit the rap music lyrics to prove Bey's knowledge, absence of mistake, and intent under Rule 404(b)(2). In addition to not being binding authority on this Court, these cases are all easily distinguishable from the instant matter in that permissible 404(b) purposes were at issue. *See United States v. Foster*, 939 F.2d 445, 449 (7th Cir. 1991) (where defendant disclaimed ownership of luggage containing narcotics and knowledge of the contents therein, rap lyrics containing drugs code words were admissible under 404(b) because "the only disputed issue at [the] trial was whether he knew that he was transporting controlled substances."); *United States v. Houston*, 205 F.Supp.2d 856, 856 n.6 (W.D. Tenn. 2002) (where defendant admitted actual possession of firearms but disclaimed ownership and knowledge of the firearms, the Court noted in dicta that his rap lyrics referring to guns may have been admissible under 404(b) "as circumstantial evidence to show knowledge or absence of mistake . . . ."); *United States v. Brown*, No. 407-CR-208,

2008 WL 2660587 at *1 (S.D. Ga. July 7, 2008) (finding personal writings admissible evidence to prove defendant's knowledge, opportunity, and lack of mistake where defendant was charged not only with firearm possession, but also with conspiracy and attempted credit union robbery).

Accordingly, because none of the non-propensity purposes the government identifies for admission of the rap music are "at issue" in this case, the evidence is inadmissible under Rule 404(b)(2) and there is no need to address the remainder of the four-step test.

      b. Rule 801(d)(2)(A): Statement by a Party Opponent

The government also argues that, as statements by a party opponent, the rap videos and audio clip are exempt from the hearsay prohibition in Rule 802. Fed. R. Evid. 801(d)(2)(A). Under the hearsay exemption in Rule 801(d)(2)(A), a statement that "is offered against an opposing party and . . . was made by the party in an individual or representative capacity" is not hearsay. Fed. R. Evid. 801(d)(2)(A).

Bey does not dispute creating the rap music, but responds that the music does not constitute an admission of any kind, and that to characterize it as such necessitates the improper conclusion that he is "admitting" to the behavior described in his lyrics. (ECF No. 53 at 15.) But an opposing party's statement under Rule 801(d)(2) – formerly termed an "admission" under that Rule – need not "admit" anything against the party's interest at the time the statement was made. Rather, under Third Circuit precedent, the statement must be made by the opposing party in an individual or representative capacity, offered against the opposing party, and it must be contrary to that party's position at the time of trial. *See* McCormick on Evidence, § 254 nn.2, 19 (2016); *United States v. Ciavarella*, 716 F.3d 705, n.9 (3d Cir. 2013) (to be admissible under Rule 801(d)(2), "a party's admission must be contrary to that party's position at the time of the trial.") (quotation omitted).

There is no need to reach a conclusion as to whether the rap videos and audio clip fall under the scope of Rule 801(d)(2)(A), since they run afoul of Rule 404(b)(2), as previously discussed. An out-of-

9

court statement is not admissible merely because it is "not hearsay" under Rule 801(d)(2)(A) – it must also pass muster under the other Rules of Evidence. *See, e.g.*, *United States v. Mason,* 294 Fed. Appx. 193, 198 (6th Cir.2008) ("Hearsay and relevance are separate hurdles that the party attempting to introduce the evidence must overcome."); *United States v. Oberle,* 136 F.3d 1414, 1418 (10th Cir.1998) ( "Although the statements are party admissions under Rule 801(d) and thus not hearsay, they must nevertheless also be analyzed for admissibility under Rule 404(b) because they reveal or suggest prior criminal conduct.").

Accordingly, because the rap music evidence is barred by Rule 404(b)(2), it is not admissible as a hearsay exemption under Rule 801(d)(2)(A).

### 3. Rule 403: Whether the Probative Value of the Evidence is Substantially Outweighed by the Danger of Unfair Prejudice

Even if the rap music evidence, the 2002 conviction, and the 2002 arrest were otherwise admissible, which they are not, they remain subject to the unfair prejudice standard in Rule 403. *See McAlinney v. Marion Merrell Dow, Inc.,* 992 F.2d 839, 843 (8th Cir. 1993) ("Although Federal Rule of Evidence 801(d)(2) provides that [party-opponent] admissions are not hearsay, Rule 403 still permits the district court to exclude such evidence . . . ."); *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992) (holding that where non-propensity evidence is permissible under Rule 404(b)(2), "admissibility depends upon whether its probative value outweighs its prejudicial effect."); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (finding that rap lyrics are properly admitted where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice); *United States v. Belfast*, 611 F.3d 783, 820 (11th Cir. 2010) (same); *United States v. Miller*, 638 Fed. Appx. 543, 545 (8th Cir. 2016) (same).

Rule 403 permits a district court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. To determine the

admissibility of evidence under Rule 403, the Court must balance (i) the strength of the evidence; (ii) the need for the evidence in light of the contested trial issues and the other evidence available to the government; and (iii) the danger that the evidence will inflame the jurors and cause them to convict on impermissible grounds. *See United States v. Sriyuth*, 98 F.3d 739, 747-48 (3d Cir. 1996). Rule 403 balancing lies within the "broad discretion" of the district court. *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010).

      a. <u>The Rap Videos and Audio Clip are Inadmissible Under Rule 403</u>

          (i)    <u>Strength of the Evidence</u>

Turning first to the admissibility of the rap music evidence under Rule 403 and the strength of that evidence, the government argues that the music video and audio clip have a "high probative value" (ECF No. 49 at 19, 22) because they contain assertions by Bey that he carries concealed firearms and uses firearms, such as:

- "[S]mall Glock in my pocket" (*Love Me*)
- "I feel that steel" (*Straight Outta Philly*)
- "When you see me I'm strapped under my garments. Packin' pistols in Porsches." (*Outtro*)
- "Where I'm from we don't miss . . . play with heavy Tommy guns like John Dillinger" (*Criminal*)
- "No disrespect to Jews but I move with the Uz" (*Criminal*)
- "I'm warning ya / go and ask Jay Electronica / 23rd and Tasker, blast you in your yarmulke." (*Criminal*)

Viewed in their broader artistic context, the rap music evidence does not have a high probative value. Rap lyrics are not necessarily autobiographical statements; rather, rap music is a well-recognized

musical genre that often utilizes exaggeration, metaphor, and braggadocio for the purpose of artistic expression. Because rap lyrics may falsely or inaccurately depict real-life events, they should not necessarily be understood as autobiographical statements.[2]

The characteristics of rap as an art form are clearly present in Bey's lyrics. Bey assumes an alter ego when he raps; the songs at issue were recorded under the aliases "Prada Idah" and "Muslida Bey." Although Bey's songs are expressed through a first-person narrative and include references to his life – such as the intersection where he lives and where he was arrested for this offense – his lyrics also clearly feature fictional imagery, metaphors, and exaggerated storylines. The government has not demonstrated, for example, that Bey actually carries pistols while in Porsches, has been shot in his chest and experienced burning "like vodka," has shot Jewish people, or kills "at will."

Cherry-picking the lyrics that reference firearms and entering them into evidence would take them out of context. Given the exaggerations and fabrications scattered throughout Bey's lyrics, the statements referring to firearms have minimal probative value as to his guilt for this offense. *See United States v. Sneed*, No. 14-159, 2016 WL 4191683 at *1-*7, *6 (M.D. Tenn. Aug. 9, 2016) ("The Government's argument has a fatal flaw; rapping about selling drugs does not make it more likely that Defendant Sneed did, in fact, sell drugs."); *State v. Skinner*, 95 A.3d 236, 251 (N.J. 2014) ("[W]e detect little to no probative value to the [rap] lyrics whatsoever. The difficulty in identifying probative value in fictional or other forms of artistic self-expressive endeavors is that one cannot presume that, simply because an author has chosen to write about certain topics, he or she has acted in accordance with those views. One would not presume that Bob Marley, who wrote the well-known song 'I Shot the Sheriff,' actually shot a sheriff, or that Edgar Allan Poe buried a man beneath his floorboards, as depicted in his

---

[2] *See generally* Andrea Dennis, *Poetic (In)Justice? Rap Music Lyrics as Art, Life and Criminal Evidence*, 31 COLUM. J.L. & ARTS 25 (2007).

short story 'The Tell-Tale Heart,' simply because of their respective artistic endeavors on those subjects.").

Moreover, the probative value of the rap videos and lyrics is further undercut by the fact that they are undated, so there is no indication as to whether Bey created the lyrics close in time to the date of his arrest.

      (ii)   <u>Need for the Evidence in Light of the Contested Trial Issues and the Other Evidence Available to the Government</u>

Turning next to the need for the evidence in light of the contested trial issues and the other evidence available to the government, the rap music video and audio clip are not necessary to prove Bey's guilt. Bey's defense notwithstanding, the government has the testimony of at least one, and potentially two, Philadelphia Police officers who will swear under oath that they recovered a firearm from Bey's waistband on the night of March 28, 2016. In light of this other evidence available to the government, the rap music video and audio clip are not necessary to the case against Bey.

      (iii)   <u>Danger that the Evidence Will Inflame the Jurors and Cause them to Convict on Impermissible Grounds</u>

As to the danger of unfair prejudice, the rap videos and lyrics are highly inflammatory. As the Third Circuit has explained, "The term unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Rutland*, 372 F.3d 543, 546 (3d Cir. 2004) (*quoting* Advisory Committee Note to Rule 403) (citation omitted). Here, the lyrics at issue contain language and imagery related to drugs, gun crime, violence based on religion, and other potentially offensive themes. Admitting them into evidence presents a serious risk of inflaming the jurors and influencing them to convict Bey on impermissible grounds. *Sriyuth*, 98 F.3d at 748; *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (holding that the district court erred in admitting "heavily prejudicial" rap video because the lyrics "contained violence, profanity, sex,

13

promiscuity, and misogyny and could reasonably be understood as promoting a violent and unlawful lifestyle."); *Skinner*, 95 A.3d at 251 (holding that the defendant's "graphically violent rap lyrics could be fairly viewed as demonstrative of a propensity toward committing, or at the very least glorifying, violence and death . . . . [and that the] prejudicial effect overwhelms any probative value that these lyrics may have.").[3]

Moreover, many of the lyrics contain potentially inflammatory material that is entirely irrelevant to this case, such as references to the Black Mafia, Louis Farrakhan, John Dillinger, and statements about "bruis[ing] on" Jewish people and "blast[ing] you in your yarmulke." These statements risk inflaming the jurors and have no bearing whatsoever as to whether Bey possessed a firearm on March 28, 2016.

Accordingly, even if the rap music evidence were admissible under Rules 404(b)(2) and 801(d)(2)(A), which it is not, its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.

      b. <u>The 2002 Arrest and Conviction are Inadmissible Under Rule 403</u>

          (i)    <u>Strength of the Evidence</u>

Turning next to the admissibility of Bey's 2002 arrest and separate conviction for a firearms offense under Rule 403, the government argues that this evidence is "highly probative" because it evinces Bey's knowledge of firearms and absence of mistake. (ECF No. 49 at 17.) Given that, as discussed, Bey's knowledge of firearms and absence of mistake are not contested issues in this case, this argument is unavailing. Moreover, the remoteness in time of the arrest and conviction – both of which

---

[3] Empirical data suggests that the introduction of rap music can have a powerful prejudicial effect on jurors, who, despite their efforts, may "become more disposed to and confident in a guilty verdict what with the added weight of the negative personality trait associations conjured up by . . . inflammatory lyrics." Stuart Fischoff, *Gangsta Rap and a Murder in Bakersfield*, 294 J. OF APPLIED PSYCHOLOGY 795, 797 (1999).

are fifteen years old – undercuts their probative value. The arrest is of particularly limited weight, since the government ultimately dismissed the gun charge against Bey and declined to re-prosecute.

        (ii)   <u>Need for the Evidence in Light of the Contested Trial Issues and the Other Evidence Available to the Government</u>

As for whether the arrest and conviction are necessary to the government's case, given the police officer testimony available to the government and the nature of the contested issues, the government does not "genuine[ly] need" this evidence to prove the case against Bey. *United States v. Bradley*, 173 F.3d 225, 230 (3d Cir. 1999).

        (iii)   <u>Danger that the Evidence Will Inflame the Jurors and Cause them to Convict on Impermissible Grounds</u>

Finally, there is a considerable risk that the jury will impermissibly consider the arrest and conviction as proof of Bey's propensity to commit this offense – particularly since they both relate to firearms offenses. That prejudice would not be cured by way of an instruction that directs the jury to consider the arrest and conviction only for a permissible purpose, of which there are none. Rather, the inflammatory nature of the arrest and conviction create an overwhelming probability that the jury would *not* be able to follow such a limiting instruction. *See United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997) ("We must presume that a jury will follow an instruction to disregard inadmissible evidence . . . unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the impact of the evidence would be devastating to the defendant.") (quotation omitted).

In sum, even if the rap music evidence, arrest, and conviction were otherwise admissible under the Federal Rules of Evidence, which they are not, they are inadmissible under Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice.

### 4. Whether Admission of the Audio Clip and Rap Videos Would Violate Bey's First Amendment Right to Freedom of Expression

Finally, Bey argues that admission of the rap videos and audio clip would violate his First Amendment right to freedom of expression. Because this evidence is inadmissible under the Federal Rules of Evidence, it is not necessary to – and the Court does not – address the merits of this argument.

### III. CONCLUSION

Because the proffered evidence is inadmissible under the Federal Rules of Evidence, the Motion is denied.

An appropriate Order follows.

Dated: **April 28, 2017**

        **BY THE COURT:**

        **/s/Wendy Beetlestone, J.**

        _____
        **WENDY BEETLESTONE, J.**